UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOBETTE PRICE,

Plaintiff,

-v-

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

19-CV-8499 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), Bobette Price has challenged the final

decision of the Commissioner of Social Security denying her application for disability insurance

benefits, arguing that it was not supported by substantial evidence and contained legal error.

Both Price and the Commissioner have filed cross-motions for judgment on the pleadings.  For

the reasons that follow, Price's motion is granted.

I.      Background

Plaintiff Bobette Price is 67 years old.  (Admin. Transcript ("Tr.") at 781.)  She has a

bachelor's degree from Bronx Community College and is a mother to two grown children who

live in Georgia.  (Tr. at 783, 807-08.)  She last worked as a telephone operator for a labor union,

from 2006 to 2010.  (Tr. at 398.)  Before that, she worked as a field supervisor for a youth

employment program and as an assistant manager at a retail company.  (Tr. at 398-99.)

In 2008, Price was hospitalized for a seizure.  (Tr. at 290.)  Testing showed that she had

congestive heart failure, inflammation of the sinuses, and an aneurysm in the brain.  (Tr. at 322-

26.)  Since then, she has had a total of five seizures, the most recent when she ran out of seizure

medication in May 2011.  (Tr. at 372, 380.)  Price also suffers from a number of other ailments,

including chronic obstructive pulmonary disease, Hepatitis C, asthma, depression, and substance

abuse.  (Tr. at 380, 519, 538, 657.)

In September 2011, Price filed an application for disability insurance benefits and

supplemental security income, alleging that she became disabled on April 10, 2010.  (Tr. at 12.)

The claim was denied on November 22, 2011, after which Price filed a written request for a

hearing.  (*Id.*)  After hearings on December 3, 2012, and June 5, 2013, Administrative Law Judge

("ALJ") Seth Grossman found that Price was not disabled.  (*See* Tr. at 12-23.)  He concluded that

Price was "capable of performing past relevant work as a telephone solicitor," as this work did

"not require the performance of work-related activities precluded by the claimant's residual

functional capacity."  (Tr. at 22.)

Eventually, Price filed an appeal in this Court.  *See Price v. Comm'r of Soc. Sec*, No. 14-

CV-9164, 2016 WL 1271501 (S.D.N.Y. Mar. 31, 2016).  In 2016, the Court remanded the case

to the Commissioner on the ground that the ALJ's decision had "improperly discounted the

views of treating physicians and nurse practitioners." *Id.* at *3.  The Commissioner then

remanded the case to ALJ Miriam Shire, who — after holding a hearing in New York on August

22, 2017 — also concluded that Price was not disabled.  (Tr. at 655-56.)  Like ALJ Grossman,

ALJ Shire found that Price had "retained the residual functional capacity to perform past relevant

work as a telephone operator."  (Tr. at 668.)  Price now appeals this decision, arguing that it is

"not supported by substantial evidence" and "contrary to the law."  (*See* Dkt. No. 1 at 2.)

## II.    Legal Standard

Under the Social Security Act, and as relevant here, a disability is an "inability to engage

in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To establish

a disability, a claimant must demonstrate an impairment "of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

§ 423(d)(2)(A).

In evaluating disability claims, the Social Security Administration "employs a five-step

procedure." *Price*, 2016 WL 1271501, at *2.  The Commissioner considers (1) whether the

claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a

"severe impairment" limiting her ability to work; (3) whether the claimant's impairment is listed

in the regulations; (4) whether the claimant has the residual functional capacity to perform her

past work; and (5) if the claimant does not have that capacity, whether there is other work she

could perform.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  At the first four steps, the

claimant bears the burden of proof; at the final step, the burden belongs to the Commissioner.  *Id*.

"A district court may set aside the Commissioner's determination that a claimant is not

disabled only if the factual findings are not supported by 'substantial evidence' or if the decision

is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C.

§ 405(g)).  Substantial evidence is evidence that "a reasonable mind might accept as adequate to

support a conclusion." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971)).  A "mere scintilla" is not enough.  *Id.* (quoting *Richardson*,

402 U.S. at 401).  Still, a court may not substitute its judgment for the Commissioner's "even if it

might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949

F.2d 57, 59 (2d Cir. 1991) (internal quotation marks and citation omitted).  Instead, it must

accept an ALJ's findings of fact unless "a reasonable factfinder would have to conclude

otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis, internal quotation marks, and citation omitted).

### III.      Discussion

In evaluating Price's disability claim, the ALJ undertook the required analysis, finding that Price had not engaged in substantial gainful activity since April 10, 2010; that she suffered from "seizure disorder, asthma, chronic obstructive pulmonary disease, Hepatitis C, affective disorder[,] and substance abuse"; that her impairments were not listed in the regulations; and that she had the residual functional capacity to perform "light work," so long as she did not have to "work around dangerous machinery or at unprotected heights." (Tr. at 657-667.) Ultimately, the ALJ concluded that Price was not disabled because, despite her ailments, she remained "capable of performing past relevant work as a telephone operator." (Tr. at 667.)

Price challenges the ALJ's decision on the grounds that (1) the ALJ failed to properly apply the treating physician rule, (2) the ALJ failed to consider Price's fatigue and the side effects of her medications, and (3) the ALJ wrongly concluded that Price could work as a telephone operator. (*See* Dkt. No. 12.) Because the Court concludes that the ALJ did not properly apply the treating physician rule, it does not reach Price's second or third arguments.

The treating physician rule concerns how the ALJ ought to weigh the evidence in the record. Recognizing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)," *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 3d 496, 506 (S.D.N.Y. 2014) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)), the rule states that "a treating physician's opinion is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,'" *Gualano v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 353, 358 (W.D.N.Y. 2019) (citing 20

C.F.R. § 404.1527(c)(2)).  If an ALJ decides not to give a treating physician's opinion controlling weight,  she must give "good reasons" for discounting it.  *Rolon*, 994 F. Supp. 3d at 508.  In addition, the ALJ must explicitly "consider various factors to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors, known as the *Burgess* factors, are "(1) the frequency of examination and length, nature, and extent of the treatment relationship, (2) the evidence in support of the physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) whatever other factors tend to support or contradict the opinion."  *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010).

Typically, an ALJ's failure to explicitly consider the *Burgess* factors is "a procedural error warranting remand."  *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019).  But remand is not necessary if a "searching review of the record shows that the ALJ has provided good reasons for its weight assessment."  *Id.* (internal quotation marks omitted).  Nor is remand necessary where the error is harmless — that is, where "application of the correct legal standard could lead to only one conclusion."  *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal citation omitted).  In general, courts will "not hesitate to remand when the Commissioner has not given good reasons for the weight given to a treating physician's opinion."  *Gunter*, 361 F. App'x at 199.

Price contends that the ALJ violated the treating physicians rule in discounting the opinions of Dr. Deborah Shpolyansky; Dr. Kingsley Nwokeji; and Nurse Practitioners ("NPs") Lucy Palomino, Esther Aguirre, Briana Morrison, and Nixon Cornay.  (*See* Dkt. No. 12 at 19-27.)  The Court focuses its inquiry on Drs. Shpolyansky and Nwokeji, as the opinions of nurse practitioners "do not demand the same deference as those of a treating physician" and thus fall

outside the ambit of the treating-physician rule.  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d

Cir. 2008); *see also id.* (noting that "only acceptable medical sources can be considered treating

sources whose medical opinions may be entitled to controlling weight," where "acceptable

medical sources" excludes nurse practitioners and physicians' assistants (cleaned up)); *Pappas v.

Saul*, 414 F. Supp. 3d 657, 677 (S.D.N.Y. 2019) ("Because they are not acceptable medical

sources pursuant to [SSA] Regulations, nurse practitioners cannot be considered treating sources

subject to the treating physician rule." (internal citation omitted)).

With respect to Dr. Shpolyansky, it is clear that the ALJ did not explicitly consider the

*Burgess* factors — and, in particular, failed to consider "the frequency of examination and

length, nature, and extent of the treatment relationship."  *See Gunter*, 361 F. App'x at 199.  Dr.

Shpolyansky treated Price from at least 2008 to 2012 (Tr. At 482, 554), including at least six

times in 2011 and 2012 (Tr. At 441).  According to Social Security regulations, when a treating

source "has seen [a patient] a number of times and long enough to have obtained a longitudinal

picture of [the patient's] impairment, we will give the medical source's medical opinion more

weight than we would give it if it were from a nontreating source."  20 C.F.R.

§§ 404.1527(c)(2)(i).  Over the course of a four-year treatment relationship, Dr. Shpolyansky

likely gained a "longitudinal picture" of Price's impairments — something the ALJ ought to

have taken explicitly into account.

Although failure to explicitly consider the *Burgess* factors can be grounds for remand,

that step is not necessary where the error is harmless.  That appears to be the case here.

Consider, for example, the ALJ's decision to discount Dr. Shpolyansky's May 2011 medical

report, in which the doctor opined that Price would be unable to work for at least a year.  (Tr. at

365, 664.)  Medical opinions that concern a patient's ability to work — as this one does — are

not entitled to any weight, as such opinions are "reserved to the Commissioner." *Obrist v.*

*Colvin*, No. 11-CV-470, 2013 WL 3353966, at *4 (N.D.N.Y. July 3, 2013). Thus, even if the

ALJ had given Dr. Shpolyansky's May 2011 opinion controlling weight, her ultimate conclusion

— that Price was not disabled — would not have changed. *See Zabala*, 595 F.3d at 409 (holding

that an error is harmless where "application of the correct legal standard could lead to only one

conclusion" (internal citation omitted)).

The same is true of the ALJ's decision to discount Dr. Shpolyansky's February 2012

medical assessment and questionnaire. (Tr. at 664-65.) In these forms, Dr. Shpolyansky offered

her opinion as to how many pounds Price could carry and how many hours at a time Price could

sit, stand, and walk. (Tr. at 438, 442-43.) Had the ALJ credited these opinions fully, it is

unlikely that she would have come to a different conclusion as to Price's disability status. Given

that telephone operators do not need to lift or carry any weights, the question of how much

weight Price could carry was irrelevant to the ALJ's conclusion that Price could perform her past

relevant work. And the ALJ ended up agreeing with Dr. Shpolyansky that Price needed to be

able to alternate between sitting and standing at work. In fact, her conclusion — that Price

needed to work in a position that allowed her to sit for four hours, stand for two hours, and walk

for two hours, alternating positions every hour — was roughly in line with Dr. Shpolyansky's

own view.[1] (*Compare* Tr. at 660 *with* Tr. at 438, 442.) Thus, the ALJ's decision to discount Dr.

Shpolyansky's opinions was harmless error, and the Court need not remand for fuller

consideration of her opinions.

---

[1] The ALJ's conclusion does differ slightly from Dr. Shpolyansky's opinion — they have
different assessments of how far Price can walk, for example (*compare* Tr. at 660 *with* Tr. at
443) — but Price makes no argument that eliminating such discrepancies would change the
ALJ's ultimate disability determination.

Dr. Nwokeji is a different matter.  He is an attending psychiatrist who appears in the

record at least twice, co-signing medical source statements with NP Morrison in June 2014 (Tr.

at 641-45) and NP Cornay in June 2017 (Tr. at 961-64).  Although the exact length and nature of

their doctor-patient relationship is not clear, Dr. Nwokeji does appear to qualify as one of Price's

treating physicians:  He co-signed two of her medical forms, several years apart, suggesting that

they have or had "an ongoing treatment relationship," *see* 20 C.F.R. §§ 404.1527(a)(2), and the

ALJ referred to the medical source statement he signed with NP Morrison as "a treating

physician's report commenting on the claimant's abilities" (Tr. at 666).[2]  Yet the ALJ did not

consider any of the *Burgess* factors in declining to grant his statements controlling weight.  This

failure is especially acute because the treating-physician rule "is particularly important in the

mental-health context."  *Rodriguez v. Astrue*, No. 07-CV-534, 2009 WL 637154, at *26

(S.D.N.Y. Mar. 9, 2009); *see also Bodden v. Colvin*, No. 14-CV-8731, 2015 WL 8757129, at *9

(S.D.N.Y. Dec. 14, 2015) ("A mental health patient may have good days and bad days; she may

respond to different stressors that are not always active.  Thus, the longitudinal relationship

between a mental health patient and her treating physician provides the physician with a rich and

nuanced understanding of the patient's health that cannot be readily achieved by a single

consultative examination.").

---

[2] To be sure, the record before the Court contains "a paucity of information as to [Dr. Nwokeji's] course of care for Price." *See Price*, 2016 WL 1271501, at *4.  He may have played a significant "specialist role in her care," but the record is not clear one way or the other. *Id.* Regardless, the lack of information on this point does not mean that the ALJ was free to discount his opinions.  Instead, the ALJ should have sought additional information as to Dr. Nwokeji's role in Price's care. *See id.* at *5 (holding that an ALJ may not "reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record" (internal citation omitted)).

In addition to neglecting to consider the *Burgess* factors, the ALJ also failed to offer

"good reasons" for discounting the statements.  *See Guerra*, 778 F. App'x at 77.  The ALJ

explained that she gave little weight to the statement co-signed by Dr. Nwokeji and NP Morrison

because, despite concluding that Price "experienced *constant* episodes of deterioration," they

"assessed the claimant's GAF at 60, which is indicative of no more than *moderate* symptoms."

(Tr. at 666.)  The ALJ made a similar point about the statement co-signed by Dr. Nwokeji and

NP Cornay, explaining that their report of Price's mental functioning likewise did not match

their assessment of Price's GAF at 65.  (Tr. at 667.)  GAF, or Global Assessment of Functioning,

is a scale that is "used to rate how serious a mental illness may be" by measuring "how much a

person's symptoms affect their day-to-day life on a scale of 0 to 100."  Sabrina Felson, *What is*

*the Global Assessment of Functioning (GAF) Scale?*, WebMD (Feb. 6, 2021),

https://www.webmd.com/mental-health/gaf-scale-facts.  But courts in the Second Circuit "have

noted that GAF scores are of little probative value in the disability context" and "do not

necessarily contradict a medical source's opinion that the claimant is disabled, because GAF

scores do not have a direct correlation to the severity requirements in the Commissioner's

disorders listings."  *Trankle v. Berryhill*, No. 16-CV-846, 2017 WL 5988046, at *4 (W.D.N.Y.

Dec. 4, 2017) (internal quotation marks, brackets, and citation omitted).  Thus, an apparent

conflict between a medical opinion and an assessed GAF score is not a "good reason" to discount

the opinion of a treating physician.

The ALJ also offered two additional reasons for discounting Dr. Nwokeji's co-signed

statements.  First, in discussing the statement co-signed by Dr. Nwokeji and NP Morrison, she

noted that "[t]here are no records to support marked [mental health] restrictions."  (Tr. at 666.)

Second, she called the statement signed by Dr. Nwokeji and NP Cornay "conclusory in nature

and … not supported by any treatment notes." (Tr. at 667.)  These reasons are also unavailing.

Where, as here, the clinical findings appear inadequate, it is the ALJ's "duty to seek additional

information from the treating physician." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d

Cir. 1998) (brackets and citation omitted); *see also id.* ("The lack of specific clinical findings in

the treating physician's report [does] not, standing by itself, justify the ALJ's failure to credit the

physician's opinion.").  Here, the ALJ ought to have reached out to Dr. Nwokeji to ask what

medical evidence he could offer to support his opinions — and she ought to have done so before

concluding that his findings were at odds with other evidence in the record.

Finally, the Court considers whether this failure to follow the treating-physician rule

constitutes harmless error.  It does not.  In both statements, Dr. Nwokeji opined that Price's

impairments would cause her to miss work roughly three times a month.  (*See* Tr. at 642, 962.)

Had the ALJ given this opinion controlling weight, she might have concluded that Price was, in

fact, disabled.  At the August 2017 hearing, Price's attorney asked the vocational expert ("VE")

whether Price would be able to perform her past work as a telephone operator if she had to miss

more than two days of work a month, and the VE confirmed that missing more than one day a

month would be unacceptable.  (Tr. at 833.)  Thus, Dr. Nwokeji's opinion — if credited —

would probably have led the ALJ to conclude that Price could not work as a telephone operator,

in which case she would have had to determine whether Price could perform any other job that

"exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Because "application of the correct

legal standard" could lead to more than one conclusion, the error is not harmless, and remand is

proper.  *Zabala*, 595 F.3d at 409 (internal citation omitted).

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is

GRANTED, and the Commissioner's cross-motion for judgment on the pleadings is DENIED.

The case is hereby remanded to the Commissioner for further proceedings consistent with this

Opinion and Order.

      The Clerk of Court is directed to close the motions at Docket Numbers 11 and 13 and to

close this case.

      SO ORDERED.

Dated:  March 31, 2021
       New York, New York

                                     J. PAUL OETKEN
                             United States District Judge